**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**ALYSSA RIVERA, individually and on behalf of all others similarly situated,**

***Plaintiffs,***

**v.**

**ZEROED-IN TECHNOLOGIES, LLC,**

**Serve: Registered Agent**
**Keith A. Goode**
**780 Elkridge Landing Road**
**Suite 208**
**Linthicum, Maryland 21090**

**And**

**DOLLAR TREE, INC.,**

**Serve: Corporation Service Company**
**100 Shockoe Slip**
**Floor 2**
**Richmond, Virginia 2319**
**and**

**FAMILY DOLLAR, LLC**

**Serve: Corporation Service Company**
**2626 Glenwood Avenue**
**Suite 550**
**Raleigh, NC 27608**

***Defendants***

Case No.

**CLASS ACTION COMPLAINT**

Plaintiff, Alyssa Rivera, individually and on behalf of all others similarly situated, brings this action against Defendants Zeroed-In Technologies, LLC, Dollar Tree, Inc., and Family Dollar, LLC (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1. Zeroed-In Technologies, LLC ("Zeroed-In") is a data and technology consulting firm that provides work force analytical services to its customers, including Dollar Tree, Inc. and Family Dollar, LLC (Dollar Tree, Inc. and Family Dollar, LLC are collectively referred to as, "Dollar Tree").[1]

2. In August 2023, Zeroed-In lost control over Dollar Tree's employees' highly sensitive personal information in a data breach by cybercriminals (the "Data Breach").

3. On or about November 27, 2023, Zeroed-In began sending notice to Dollar Tree employees and issued a public statement notifying current and former employees and their dependents that on August 8, 2023, it had "discovered suspicious activity related to certain network systems." *See* Ex. A (the "Notice Letter").

4. Specifically, "between August 7, 2023 and August 8, 2023, "an unauthorized actor gained access to certain systems." Ex. A. Zeroed-In conducted an investigation but was not able to determine the full extent "of the specific files that were accessed or taken by the unauthorized actor." *Id.*

5. As a result of the Data Breach, Zeroed-In reported that certain Personally Identifying Information[2] (collectively "PII") of Dollar Tree's current and former employees was affected.

---

[1] See Zeroed-In Data Breach Notification to Maine Attorney General, November 27, 2023, avail. at https://apps.web.maine.gov/online/aeviewer/ME/40/b3993ddd-2443-4645-ae45-f36dc7686236.shtml (attached hereto as **Exhibit A**)

[2] The Federal Trade Commission defines "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 17 C.F.R. § 248.201(b)(8). To be clear, according to Defendants, not every type of information included in that definition was compromised in the breach.

6. The compromised PII that was present on Zeroed-In's systems at the time of the Data Breach included current and former employees' names, dates of birth, and Social Security numbers. Ex. A.

7. Upon information and belief, victims of the Data Breach did not start receiving letters notifying them of the Data Breach or detailing which specific types of their PII was compromised until over three months after Zeroed-In discovered the Data Breach. *Id.*

8. The Notice Letter urged Plaintiff and victims of the Data Breach to "remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious activity and to detect errors." *Id.*

9. The Notice Letter also encouraged Plaintiff and other victims of the Data Breach to consider, *inter alia*, placing credit freezes on their credit files, place or extend fraud alerts on their credit file, monitoring accounts, and ordering copies of their credit reports. *Id.*

10. Zeroed-In offered 12 months of complimentary credit monitoring through TransUnion IdentityForce to the affected victims as a result of the Data Breach.

11. As a consequence of the Data Breach, Plaintiff and Class members' sensitive PII has been released into the public domain and they have had to, and will continue to have to, spend time to protect themselves from fraud and identity theft.

12. Plaintiff and members of the proposed Class are victims of Defendants' negligence and failure to honor their promise to keep PII private. Specifically, Plaintiff and members of the proposed Class trusted Defendants with their PII. But Defendants betrayed that trust. Defendants failed to properly use up-to-date security practices to prevent the Data Breach, and when the Data Breach was discovered, Defendants failed to promptly notify victims of the Data Breach of the types of information that was stolen.

13. Defendants' negligence and failure to abide by its promise to maintain the privacy of its employees' PII caused real and substantial damage to Plaintiff and members of the proposed Class.

14. Further, because this same information remains stored in Defendants' systems, Plaintiff and Class members have an interest in ensuring that Defendants takes the appropriate measures to protect their PII against future unauthorized disclosures.

15. Plaintiff, individually and on behalf of all others similarly situated, thus brings this class action against Defendants for failing to adequately secure and safeguard the PII of Plaintiff and the Class, breaching the terms of Defendants' implied contracts with its patients, and failing to comply with industry standards regarding the use and transmission of PII.

16. Plaintiff is a former Defendants employee and Data Breach victim, who suffered identity theft following the Data Breach. Plaintiff brings this class action on behalf of all employees harmed by Defendants' misconduct.

## PARTIES

17. Plaintiff, Alyssa Rivera, is a natural person and citizen of Florida. Plaintiff is a former Dollar Tree employee and Data Breach victim, receiving Zeroed-In's Notice Letter on or around November 27, 2023.

18. Defendant Zeroed-In is a Florida registered limited liability company with its principal place of business located at 780 Elkridge Landing Road, Suite 208, Linthicum, Maryland.

19. Defendant Dollar Tree, Inc. is a publicly traded corporation incorporated in Virginia with its principal place of business located at 500 Volvo Parkway, Chesapeake, Virginia 23320. Defendant Dollar Tree can be served through its registered agent Corporation Service Company, 100 Shockoe Slip, Floor 2, Virginia 23219.

20. Defendant Family Dollar, LLC, was formed in North Carolina and has its principal

place of business located at 500 Volvo Parkway, Chesapeake, Virginia 23320. Defendant Family Dollar can be served through its registered agent Corporation Service Company at 2626 Glenwood Avenue, Suite 550, Raleigh, North Carolina 27608.

## JURISDICTION & VENUE

21. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and minimal diversity exists because many putative class members including Plaintiff are citizens of a different state than Defendants. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

22. This Court has personal jurisdiction over Defendants because, personally or through their agents, Defendants operate, conduct, engage in, or carry on a business in this District and committed tortious acts in this District.

23. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district. Moreover, Defendant Zeroed-In is based in this District, maintains Plaintiff's and Class Members' PII in this District, and has caused harm to Plaintiff and Class Members in this District.

## BACKGROUND FACTS

### A. Zeroed-In

24. Zeroed-In is a data and technology consulting firm that provides work force analytical services to its customers, including Dollar Tree.

25. Dollar Tree requires its employees to disclose their PII in order to work for Dollar Tree.

26. That PII includes their names, dates of birth, and Social Security numbers.

27. Dollar Tree provides its employees' PII to Zeroed-In as part of and in order to receive Zeroed-In's analytical services.

28. In exchange for employees' PII, Defendants implicitly promise to secure employees' PII.

29. But, on information and belief, Defendants never implemented or enforced the reasonable cybersecurity measures and policies necessary to deliver on those promises.

**B. Defendants fails to safeguard employee PII**

30. Plaintiff is a former Dollar Tree employee. Plaintiff was employed with Dollar Tree during 2023.

31. Defendants collect and maintain employee PII in their computer systems as a condition of their employment.

32. In collecting and maintaining the PII, Defendants agreed they would safeguard the data according to state and federal law and their internal policies, including those above.

33. Despite those promises, Defendants lost control over Dollar Tree's employees' PII.

34. On August 7, 2023, hackers bypassed Zeroed-In's cybersecurity undetected and accessed Dollar Tree's employees' PII.

35. Zeroed-In detected the breach on August 8, 2023.

36. Thus, cybercriminals accessed and stole employees' PII, including their names, dates of birth, and Social Security numbers.

37. Defendants did not notify Dollar Tree employees that hackers had stolen their information, nor would it until late November 2023.

38. By August 31, 2023, Zeroed-In concluded its "investigation" and notified Dollar Tree about the breach.

39. Zeroed-In is warning Dollar Tree employees and their families to monitor their

credit scores and enroll in credit monitoring, thus recognizing that employees should protect themselves from identity theft following the Data Breach.

40. On information and belief, Defendants failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over employee PII. Defendants' negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing PII. Further, the Notice Letter makes clear that Defendants cannot, or will not, determine the full scope of the Data Breach, as it has been unable to determine exactly what information was stolen and when.

**C. Plaintiff's Experience**

41. Plaintiff is a former Dollar Tree employee, having been employed with Dollar Tree in 2023.

42. As a condition of Plaintiff's employment, Dollar Tree required Plaintiff to disclose her PII.

43. Plaintiff provided her PII to Defendants and trusted that the companies would use reasonable measures to protect it according to Defendants' internal policies and state and federal law.

44. Plaintiff has and will spend considerable time and effort monitoring her accounts to protect herself from identity theft. Plaintiff fears for her personal financial security and uncertainty over what PII was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

**D. Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft**

45. Plaintiff and members of the proposed Class have suffered injury from the misuse

of their PII that can be directly traced to Defendant.

46. As a result of Defendants' failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their PII is used;

b. The diminution in value of their PII;

c. The compromise and continuing publication of their PII;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen PII; and

h. The continued risk to their PII, which remains in the possession of defendant and is subject to further breaches so long as defendant fails to undertake the appropriate measures to protect the PII in their possession.

47. Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

48. The value of Plaintiff and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen

private information openly and directly on various “dark web” internet websites, making the information publicly available, for a substantial fee of course.

49. It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

50. One such example of criminals using PII for profit is the development of “Fullz” packages.

51. Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as “Fullz” packages.

52. The development of “Fullz” packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class’s phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other members of the proposed Class’s stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

53. Defendants disclosed the PII of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the PII of Plaintiff and members of the proposed Class to people engaged in disruptive

and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

54. Defendants' failure to properly notify Plaintiff and members of the proposed Class of the Data Breach exacerbated Plaintiff and members of the proposed Class's injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

**E. Defendants failed to adhere to FTC guidelines.**

55. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

56. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

a. protect the personal customer information that they keep;

b. properly dispose of personal information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

57. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

58. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords

to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

59. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

60. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

## CLASS ACTION ALLEGATIONS

61. Plaintiff sues on behalf of herself and the proposed Class ("Class"), defined as follows:

> All individuals whose PII was actually or potentially accessed or acquired during the Data Breach including all individuals who were sent a notice of the Data Breach.

Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

62. Plaintiff reserves the right to amend the class definition.

63. This action is properly maintainable as a class action under Indiana Rules of Trial Procedure 23(A) and (B)(3).

64. Numerosity. Defendants employes thousands of individuals. Therefore, members

of the Class are so numerous that joinder of all members is impractical.

65. Commonality. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

66. Whether Defendants failed to adopt the practices and procedures necessary to adequately safeguard the information compromised in the Data Breach;

67. Whether Defendants timely, adequately, and accurately informed Class Members that their PII had been compromised;

68. Whether Defendants breached their implied contracts with Plaintiff and the Class;

69. Whether Defendants were unjustly enriched;

70. Whether Defendants acted negligently;

71. Whether Class members are entitled to damages as a result of Defendants' wrongful conduct;

72. Whether Plaintiff and the Class are entitled to restitution as a result of Defendants' wrongful conduct; and

73. Whether Plaintiff and the Class are entitled to injunctive relief.

74. Typicality. Plaintiff's claims are typical of those of other Class members because Plaintiff's PII, like that of every other Class member, was compromised by the Data Breach. Further, Plaintiffs, like all Class members, were injured by Defendants' uniform conduct. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all other Class members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiff and those of other Class members arise from the same operative facts and are based on the same legal theories.

75. Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the Class in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Class. The damages and infringement of rights Plaintiff suffered are typical of other Class members, and Plaintiff seek no relief that is antagonistic or adverse to the members of the Class. Plaintiff have retained counsel experienced in complex consumer class action litigation, including data breach litigation, and Plaintiff intend to prosecute this action vigorously.

76. Superiority of Class Action. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of numerous individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the Class's common issues to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts. In addition, without a class action, it is likely that many members of the Class will remain unaware of the claims they may possess.

77. The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

78. Adequate notice can be given to Class members directly using information maintained in Defendant's records.

79. Predominance. Pursuant to Rule 23(B)(3), the issues in this action are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such

particular issues include but are not limited to the questions identified above.

80. This proposed class action does not present any unique management difficulties.

**COUNT I**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class)**

81. Plaintiff realleges all previous paragraphs as if fully set forth below.

82. Plaintiff and members of the Class entrusted their PII to Defendant. Defendants owed to Plaintiff and other members of the Class a duty to exercise reasonable care in handling and using the PII in their care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

83. Defendants owed a duty of care to Plaintiff and members of the Class because it was foreseeable that Defendants' failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PII—just like the Data Breach that ultimately came to pass. Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and members of the Class's PII by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in their employ who were responsible for making that happen.

84. Defendants owed to Plaintiff and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII. Defendants also owed a duty to timely and accurately disclose to Plaintiff and members of the Class the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and members of the Class to take appropriate measures to protect their PII, to be vigilant in the face of an increased

risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

85. Defendants owed these duties to Plaintiff and members of the Class because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from Defendants' inadequate security protocols. Defendants actively sought and obtained Plaintiff's and members of the Class's personal information and PII.

86. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendants hold vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the PII—whether by malware or otherwise.

87. PII is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and members of the Class's and the importance of exercising reasonable care in handling it.

88. Defendants breached their duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and members of the Class which actually and proximately caused the Data Breach and Plaintiff and members of the Class's injury. Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and members of the Class's injuries-in-fact. As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiff and members of the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

89. Defendants' breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and members of the Class actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Class)**

90. Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

91. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendants had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and members of the Class's PII.

92. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, employees' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiff and the members of the Class's sensitive PII.

93. Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect their employees' PII and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII Defendants had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to

their employees in the event of a breach, which ultimately came to pass.

94. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

95. Defendants had a duty to Plaintiff and the members of the Class to implement and maintain reasonable security procedures and practices to safeguard Plaintiff and the Class's PII.

96. Defendants breached their respective duties to Plaintiff and members of the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff and members of the Class's PII.

97. Defendants' violation of Section 5 of the FTC Act and their failure to comply with applicable laws and regulations constitutes negligence per se.

98. But for Defendants' wrongful and negligent breach of their duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

99. The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that Defendants was failing to meet their duties and that their breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

100. Had Plaintiff and members of the Class known that Defendants did not adequately protect their PII, Plaintiff and members of the Class would not have entrusted Defendants with their PII.

101. As a direct and proximate result of Defendants' negligence per se, Plaintiff and

members of the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen personal information, entitling them to damages in an amount to be proven at trial.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

102. Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

103. Defendants offered to employ Plaintiff and members of the Class in exchange for their PII.

104. In turn, Defendants agreed it would not disclose the PII it collects to unauthorized persons. Defendants also promised to safeguard employee PII.

105. Plaintiff and the members of the Class accepted Defendants' offer by providing PII to Defendants in exchange for employment with Defendant.

106. Implicit in the parties' agreement was that Defendants would provide Plaintiff and members of the Class with prompt and adequate notice of all unauthorized access and/or theft of their PII.

107. Plaintiff and the members of the Class would not have entrusted their PII to Defendants in the absence of such agreement with Defendant.

108. Defendants materially breached the contract(s) it had entered with Plaintiff and members of the Class by failing to safeguard such information and failing to notify them promptly of the intrusion into their computer systems that compromised such information. Defendants

further breached the implied contracts with Plaintiff and members of the Class by:

a. Failing to properly safeguard and protect Plaintiff and members of the Class's PII;

b. Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

c. Failing to ensure the confidentiality and integrity of electronic PII that Defendants created, received, maintained, and transmitted.

109. The damages sustained by Plaintiff and members of the Class as described above were the direct and proximate result of Defendants' material breaches of their agreement(s).

110. Plaintiff and members of the Class have performed as required under the relevant agreements, or such performance was waived by the conduct of Defendant.

111. The covenant of good faith and fair dealing is an element of every contract. All such contracts impose upon each party a duty of good faith and fair dealing. The parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to their form.

112. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.

113. Defendants failed to advise Plaintiff and members of the Class of the Data Breach promptly and sufficiently.

114. In these and other ways, Defendants violated their duty of good faith and fair

dealing.

115. Plaintiff and members of the Class have sustained damages because of Defendants' breaches of their agreement, including breaches thereof through violations of the covenant of good faith and fair dealing.

**COUNT IV**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

116. Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

117. This claim is pleaded in the alternative to the breach of implied contractual duty claim.

118. Plaintiff and members of the Class conferred a benefit upon Defendants in the form of services through employment.

119. Defendants appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and members of the Class. Defendants also benefited from the receipt of Plaintiff and members of the Class's PII, as this was used to facilitate their employment.

120. Under principles of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiff and the proposed Class's services and their PII because Defendants failed to adequately protect their PII. Plaintiff and the proposed Class would not have provided their PII or worked for Defendants at the payrates they did had they known Defendants would not adequately protect their PII.

121. Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by it because of their misconduct and Data Breach.

**COUNT V**
**BAILMENT**
**(On Behalf of Plaintiff and the Class)**

122. Plaintiff and members of the Class incorporate the above allegations as if fully set forth herein.

123. Plaintiffs, the Class Members, and Defendants contemplated a mutual benefit bailment when the Plaintiff and putative members of the Class transmitted their PII to Defendants solely for the purpose of obtaining employment.

124. Plaintiff and the Class entrusted their PII to Defendants for a specific purpose—to obtain employment—with an implied contract that the trust was to be faithfully executed, and the PII was to be accounted for when the special purpose was accomplished.

125. Defendants accepted the Plaintiff's and the Class's PII for the specific purpose of employment.

126. Defendants were duty bound under the law to exercise ordinary care and diligence in safeguarding Plaintiff's and the Class's PII.

127. Plaintiff's and the Class's PII was used for a different purpose than the Plaintiff and the Class intended, for a longer time period and/or in a different manner or place than Plaintiff and the Class intended.

128. As set forth in the preceding paragraphs, Plaintiff and the Class Members were damaged thereby.

**PRAYER FOR RELIEF**

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Classes, appointing Plaintiff as class representative, and appointing their counsel to represent the Classes;

B. Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D. Enjoining Defendants from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E. Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: December 11, 2023

Respectfully submitted,

/s/ Thomas A. Pacheco

Thomas A. Pacheco (Bar No. 1712140091)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLC**
900 W Morgan Street
Raleigh, NC 27603
T: (212) 946-9305
tpacheco@milberg.com

Lynn A. Toops (*Pro Hac Vice* forthcoming)
Amina A. Thomas (*Pro Hac Vice* forthcoming)
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com
athomas@cohenandmalad.com

J. Gerard Stranch, IV (*Pro Hac Vice* forthcoming)
Andrew E. Mize (*Pro Hac Vice* forthcoming)
STRANCH, JENNINGS & GARVEY, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com
amize@stranchlaw.com

Samuel J. Strauss (*Pro Hac Vice* forthcoming)
Raina Borelli (*Pro Hac Vice* forthcoming)
TURKE & STRAUSS, LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703
(608) 237-1775
(608) 509-4423 (facsimile)
sam@turkestrauss.com
raina@turkestrauss.com

***Counsel for Plaintiff and the Proposed Class***

# EXHIBIT A

We represent Zeroed-In Technologies, LLC ("Zeroed-In"), located at 8595 College Parkway, Suite 350, Fort Myers, FL 33919, and are writing on behalf of the below entities to notify your Office of an incident that may affect the security of certain information relating Maine residents. Zeroed-In is a data and technology consulting firm that provides workforce analytical services to its customers, including the following entities ("Customers") and includes the total number of impacted individuals in parenthesis below:

- Dollar Tree & Family Dollar, 500 Volvo Parkway, Chesapeake, VA 23320, (7,034)

The investigation into this matter is ongoing, and this notice will be supplemented with any new significant facts learned subsequent to its submission. By providing this notice, Zeroed-In does not waive any rights or defenses regarding the applicability of Maine law, the applicability of the Maine data event notification statute, or personal jurisdiction.

**Nature of the Data Event**

On August 8, 2023, Zeroed-In discovered suspicious activity related to certain network systems. Zeroed-In immediately took steps to secure the systems and launched an investigation into the nature and scope of the activity. Through the investigation, it was determined that an unauthorized actor gained access to certain systems between August 7, 2023 and August 8, 2023. While the investigation was able to determine that these systems were accessed, it was not able to confirm all of the specific files that were accessed or taken by the unauthorized actor. Therefore, Zeroed-In conducted a review of the contents of the systems to determine what information was present at the time of the incident, to whom the information relates, and to which Zeroed-In customers the information belonged. This review was completed on August 31, 2023 and Zeroed-In notified Customer of the event because certain individuals associated with them were identified during the review. The information that was present on the systems at the time of the incident includes names, dates of birth, and/or Social Security number. Zeroed-In coordinated notification with Customer and is providing notice to individuals and regulators, as required, on Customer's behalf.

**Notice to Maine Residents**

On or about November 27, 2023, Zeroed-In began providing written notice of this incident to approximately 7,034 Maine residents. Written notice is being provided in substantially the same form as the letter attached here as ***Exhibit A***. Notification to impacted customers and individuals is ongoing, and Zeroed-In may supplement this notification if it is determined that a significant amount of additional Maine residents will receive notice.

**Other Steps Taken and To Be Taken**

Upon discovering the event, Zeroed-In moved quickly to investigate and respond to the incident, assess the security of Zeroed-In systems, and identify potentially affected individuals and Zeroed-In customers. Further, Zeroed-In notified federal law enforcement regarding the event. Zeroed-In is also reviewing existing policies and procedures and implemented additional safeguards. Zeroed-In is also providing complimentary access to credit monitoring services for twelve (12)

months, through TransUnion, to individuals whose information was potentially affected by this incident.

Additionally, Zeroed-In is providing impacted individuals with guidance on how to better protect against identity theft and fraud, including information on how to place a fraud alert and security freeze on one's credit file, the contact details for the national consumer reporting agencies, information on how to obtain a free credit report, a reminder to remain vigilant for incidents of fraud and identity theft by reviewing account statements and monitoring free credit reports, and encouragement to contact the Federal Trade Commission, their state Attorney General, and law enforcement to report attempted or actual identity theft and fraud. Zeroed-In is providing written notice of this incident to relevant state regulators, as necessary, and to the three major credit reporting agencies, Equifax, Experian, and TransUnion.

# EXHIBIT A

Zeroed-In Technologies, LLC
c/o Cyberscout
PO Box 1286
Dearborn, MI 48120-9998

zeroedin

[redacted]

0001010102G0500

P

November x, 2023

**NOTICE OF SECURITY INCIDENT**

Dear [redacted]:

Zeroed-In Technologies, LLC ("Zeroed-In") is writing to notify you of a security incident that involved your information. Zeroed-In is a data and technology consulting firm that provides workforce analytical services to its clients, including [redacted]. As part of these services, Zeroed-In receives information related to applicants and current and former employees of its clients. This letter includes information about Zeroed-In's response to the incident and additional steps you may consider taking.

**What Happened?** On August 8, 2023, Zeroed-In discovered suspicious activity related to certain systems. Zeroed- In immediately took steps to secure the systems and launched an investigation into the nature and scope of the activity. Through the investigation, we determined that an unauthorized actor gained access to certain systems between August 7, 2023, and August 8, 2023. While the investigation was able to determine that these systems were accessed, it was not able to confirm all of the specific files that were accessed or taken by the unauthorized actor. Therefore, Zeroed-In conducted a review of the contents of the systems to determine what information was present at the time of the incident and to whom the information relates.

**What Information Was Involved?** This review was completed on August 31, 2023, and Zeroed-In notified [redacted] of this incident. We are notifying you because the investigation determined that your information was present on the systems involved at the time of the incident and the information includes your name, date of birth, and Social Security number.

**What We Are Doing.** Zeroed-In takes the confidentiality, privacy, and security of information in our care very seriously. Upon discovering the event, we took steps to secure our systems, launched an investigation, and reported this event to federal law enforcement. As part of our ongoing commitment to the security of your information, we are reviewing our existing policies and procedures and implemented additional safeguards to prevent a similar event from occurring in the future. Zeroed-In is also reporting this event to relevant regulators, as required.

Zeroed-In is also offering you access to Single Bureau Credit Monitoring/Single Bureau Credit Report/Single Bureau Credit Score services at no charge. These services provide you with alerts for twelve (12) months from the date of enrollment when changes occur to your credit file. This notification is sent to you the same day that the change or update takes place with the bureau. Finally, we are providing you with proactive fraud assistance to help with any questions that you might have or in event that you become a victim of fraud. These services will be provided by Cyberscout through Identity Force, a TransUnion company specializing in fraud assistance and remediation services. You must activate these services and instructions to do so can be found in the enclosed *Additional Steps You Can Take.*

**What You Can Do.** We encourage you to remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious activity and to detect errors. Please review the enclosed *Additional Steps You Can Take,* which includes further information on additional steps you may

consider taking. Additionally, Zeroed-In encourages you to activate the complimentary credit monitoring being offered.

**For More Information.** Zeroed-In understands you may have questions about this event that are not addressed in this letter. If you have additional questions, please contact our dedicated assistance line 1-833-930-1130 Monday through Friday from 8:00 am to 8:00 pm Eastern time, excluding holidays. You may also write to Zeroed-In at 8595 College Parkway, Suite 350, Fort Myers, FL 33919

We sincerely apologize for any inconvenience this may cause.

Sincerely,

*Zeroed-In Technologies*

Para obtener una versión en carta en español, visite: [redacted]

# ADDITIONAL STEPS YOU CAN TAKE

**Enroll in Monitoring Services**

To enroll in Credit Monitoring services at no charge, please log on to **https://secure.identityforce.com/benefit/zeroedintech** and follow the instructions provided. When prompted please provide the following unique code to receive services: [redacted]

In order for you to receive the monitoring services described above, you must enroll within 90 days from the date of this letter. The enrollment requires an internet connection and e-mail account and may not be available to minors under the age of 18 years of age. Please note that when signing up for monitoring services, you may be asked to verify personal information for your own protection to confirm your identity.

0000102028000 P

**Monitor Your Accounts**

Under U.S. law, a consumer is entitled to one free credit report annually from each of the three major credit reporting bureaus, Equifax, Experian, and TransUnion. To order a free credit report, visit www.annualcreditreport.com or call, toll- free, 1-877-322-8228. Consumers may also directly contact the three major credit reporting bureaus listed below to request a free copy of their credit report.

Consumers have the right to place an initial or extended "fraud alert" on a credit file at no cost. An initial fraud alert is a 1- year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If consumers are the victim of identity theft, they are entitled to an extended fraud alert, which is a fraud alert lasting seven years. Should consumers wish to place a fraud alert, please contact any of the three major credit reporting bureaus listed below.

As an alternative to a fraud alert, consumers have the right to place a "credit freeze" on a credit report, which will prohibit a credit bureau from releasing information in the credit report without the consumer's express authorization. The credit freeze is designed to prevent credit, loans, and services from being approved in a consumer's name without consent. However, consumers should be aware that using a credit freeze to take control over who gets access to the personal and financial information in their credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application they make regarding a new loan, credit, mortgage, or any other account involving the extension of credit. Pursuant to federal law, consumers cannot be charged to place or lift a credit freeze on their credit report. To request a credit freeze, individuals may need to provide some or all of the following information:

1. Full name (including middle initial as well as Jr., Sr., II, III, etc.);
2. Social Security number;
3. Date of birth;
4. Addresses for the prior two to five years;
5. Proof of current address, such as a current utility bill or telephone bill;
6. A legible photocopy of a government-issued identification card (state driver's license or ID card, etc.); and
7. A copy of either the police report, investigative report, or complaint to a law enforcement agency concerning identity theft if they are a victim of identity theft.

Should consumers wish to place a credit freeze or fraud alert, please contact the three major credit reporting bureaus listed below:

| Equifax | Experian | TransUnion |
|---|---|---|
| https://www.equifax.com/personal/credit-report-services/ | https://www.experian.com/help/ | https://www.transunion.com/credit-help |
| 1-888-298-0045 | 1-888-397-3742 | 1-800-916-8800 |
| Equifax Fraud Alert, P.O. Box 105069 Atlanta, GA 30348-5069 | Experian Fraud Alert, P.O. Box 9554, Allen, TX 75013 | TransUnion Fraud Alert, P.O. Box 2000, Chester, PA 19016 |
| Equifax Credit Freeze, P.O. Box 105788 Atlanta, GA 30348-5788 | Experian Credit Freeze, P.O. Box 9554, Allen, TX 75013 | TransUnion Credit Freeze, P.O. Box 160, Woodlyn, PA 19094 |

**Additional Information**

Consumers may further educate themselves regarding identity theft, fraud alerts, credit freezes, and the steps they can take to protect your personal information by contacting the consumer reporting bureaus, the Federal Trade Commission, or their state Attorney General.

The Federal Trade Commission may be reached at: 600 Pennsylvania Avenue NW, Washington, D.C. 20580; www.identitytheft.gov; 1-877-ID-THEFT (1-877-438-4338); and TTY: 1-866-653-4261. The Federal Trade Commission also encourages those who discover that their information has been misused to file a complaint with them. Consumers can obtain further information on how to file such a complaint by way of the contact information listed above. Consumers have the right to file a police report if they ever experience identity theft or fraud. Please note that in order to file a report with law enforcement for identity theft, consumers will likely need to provide some proof that they have been a victim. Instances of known or suspected identity theft should also be reported to law enforcement and the relevant state Attorney General. This notice has not been delayed by law enforcement.

*For District of Columbia residents,* the District of Columbia Attorney General may be contacted at: 400 6th Street, NW, Washington, D.C. 20001; 202-727-3400; and oag.dc.gov.

*For Maryland residents,* the Maryland Attorney General may be contacted at: 200 St. Paul Place, 16th Floor, Baltimore, MD 21202; 1-410-576-6300 or 1-888-743-0023; and www.marylandattorneygeneral.gov.

*For New Mexico residents,* consumers have rights pursuant to the Fair Credit Reporting Act, such as the right to be told if information in their credit file has been used against them, the right to know what is in their credit file, the right to ask for their credit score, and the right to dispute incomplete or inaccurate information. Further, pursuant to the Fair Credit Reporting Act, the consumer reporting bureaus must correct or delete inaccurate, incomplete, or unverifiable information; consumer reporting agencies may not report outdated negative information; access to consumers' files is limited; consumers must give consent for credit reports to be provided to employers; consumers may limit "prescreened" offers of credit and insurance based on information in their credit report; and consumers may seek damages from violators. Consumers may have additional rights under the Fair Credit Reporting Act not summarized here. Identity theft victims and active-duty military personnel have specific additional rights pursuant to the Fair Credit Reporting Act. We encourage consumers to review their rights pursuant to the Fair Credit Reporting Act by visiting www.consumerfinance.gov/f/201504_cfpb_summary_your-rights- under-fcra.pdf, or by writing Consumer Response Center, Room 130-A, Federal Trade Commission, 600 Pennsylvania Ave. N.W., Washington, D.C. 20580.

*For New York residents,* you may contact and obtain information from these state agencies: New York Department of State Division of Consumer Protection, One Commerce Plaza, 99 Washington Ave., Albany, NY 12231-0001, 518-474-8583 / 1-800-697-1220, http://www.dos.ny.gov/consumerprotection; and New York State Office of the Attorney General, The Capitol, Albany, NY 12224-0341, 1-800-771-7755, https://ag.ny.gov.

*For North Carolina residents,* the North Carolina Attorney General may be contacted at: 9001 Mail Service Center, Raleigh, NC 27699-9001; 1-877-566-7226 or 1-919-716-6000; and www.ncdoj.gov.

*For Rhode Island residents,* the Rhode Island Attorney General may be reached at: 150 South Main Street, Providence, RI 02903; www.riag.ri.gov; and 1-401-274-4400. Under Rhode Island law, individuals have the right to obtain any police report filed in regard to this event. There are approximately 7485 Rhode Island residents that may be impacted by this event.